**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------

ELAINE WANG,                                          :
                                                     :
                Plaintiff,                            :   Case No. 1:21-cv-8742
                                                     :
v.                                                   :
                                                     :   **COMPLAINT FOR VIOLATIONS OF**
ADAMAS PHARMACEUTICALS, INC.,                        :   **SECTIONS 14(e), 14(d) AND 20(a) OF**
DAVID L. MAHONEY, NEIL F.                            :   **THE SECURITIES EXCHANGE ACT**
MCFARLANE, MICHAEL F. BIGHAM,                        :   **OF 1934**
MARTHA J. DEMSKI, WILLIAM                            :
ERICSON, J.D., JOHN MACPHEE, MPH,                    :   **JURY TRIAL DEMANDED**
SPYROS PAPAPETROPOULOS, MD, PH.D,                    :
and ANNA RICHO, J.D.,                                :
                                                     :
                Defendants.                           :
--------------------------------------------------------

Elaine Wang ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.     This is an action brought by Plaintiff against Adamas Pharmaceuticals, Inc. ("Adamas or the "Company") and the members Adamas board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of Adamas by Supernus Pharmaceuticals, Inc. and its affiliates ("Supernus").

2.     Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Solicitation Statement on Schedule 14D-9 (the "Solicitation Statement") to be filed on October 25, 2021 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders.  The Solicitation Statement recommends that Company stockholders tender their shares in support of a proposed transaction whereby Supernus Reef Inc., a wholly owned subsidiary of Supernus (the "Purchaser"), will merge with and into Adamas, with Adamas surviving as a wholly owned subsidiary of Supernus (the "Proposed Transaction").  Pursuant to the terms of the definitive agreement and plan of merger the companies entered into, dated October 10, 2021 (the "Merger Agreement"), each Adamas common share issued and outstanding will be converted into the right to receive (i) $8.10 per Share, net to the seller in cash, without interest (the "Cash Amount"), plus (ii) two (2) contingent value right per Share (the Cash Amount plus two (2) CVRs collectively are referred to as the "Merger Consideration"). Each CVR represents the right to receive (i) $.50 in cash.  In accordance with the Merger Agreement, the Purchaser will commence a tender offer to acquire all of Adamas's outstanding common stock and will expire on November 24, 2021 (the "Tender Offer").

3.      Defendants have now asked Adamas's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Solicitation Statement, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act.  Specifically, the Solicitation Statement contains materially incomplete and misleading information concerning, among other things, (i) Adamas's financial projections relied upon by the Company's financial advisor, Lazard Frères & Co. LLC ("Lazard") in its financial analyses; and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by the financial advisors. The failure to adequately disclose such material information constitutes a violation of Sections 14(e), 14(d), and 20(a) of the Exchange

Act as Adamas stockholders need such information in order to tender their shares in support of the Proposed Transaction.

4.      It is imperative that the material information that has been omitted from the Solicitation Statement is disclosed to the Company's stockholders prior to the expiration of the tender offer.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Adamas's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(e), 14(d), and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because each is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Adamas is traded on the NASDAQ Stock Exchange, which is headquartered in this District. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

**PARTIES**

9.     Plaintiff is, and has been at all relevant times, the owner of Adamas common stock and has held such stock since prior to the wrongs complained of herein.

10.     Individual Defendant David L. Mahoney has served as a member of the Board since 2009 and is the Chairman of the Board.

11.     Individual Defendant Neil F. McFarlane has served as a member of the Board since September 2019 and is the Company's Chief Executive Officer.

12.     Individual Defendant Michael F. Bigham has served as a member of the Board since September 2016.

13.     Individual Defendant Martha J. Demski has served as a member of the Board and since March 2014.

14.     Individual Defendant William Ericson, J.D. has been a member of the Board since 2005.

15.     Individual Defendant John MacPhee, MPH has served as a member of the Board since May 2013.

16.     Individual Defendant Spyros Papapetropoulos, M.D., Ph.D. has served as member of the Board since November 2020.

17.     Individual Defendant Anna Richo, J.D. has served as member of the Board since August 2020.

18.     Defendant Adamas is incorporated in Delaware and maintains its principal offices at 1900 Powell Street, Suite 1000, Emeryville, California 94608.  The Company's common stock trades on the NASDAQ Stock Exchange under the symbol "ADMS."

19.     The defendants identified in paragraphs 10-17 are collectively referred to as the "Individual Defendants" or the "Board."

20.     The defendants identified in paragraphs 10-18 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A.     **The Proposed Transaction**

21.     Adamas focuses on the discovery, development, and commercialization of medicines for patients suffering from chronic neurologic disorders in the United States. It offers GOCOVRI, an extended release capsule for the treatment of dyskinesia in patients with Parkinson's disease receiving levodopa-based therapy, with or without concomitant dopaminergic medications, as well as an adjunctive treatment to levodopa/carbidopa in patients with Parkinson's disease experiencing OFF episodes; and OSMOLEX ER, an extended release tablet to treat Parkinson's disease and drug-induced extrapyramidal reactions in adult patients. The Company is also developing ADS-4101, which has completed two Phase 1b studies for treating partial onset seizures in patients with epilepsy. In addition, it offers NAMZARIC and NAMENDA XR, a memantine hydrochloride extended release and donepezil hydrochloride capsules for the treatment of moderate to severe dementia of an Alzheimer's type. The Company was formerly known as NeuroMolecular Pharmaceuticals, Inc. and changed its name to Adamas Pharmaceuticals, Inc. in July 2007. Adamas was incorporated in 2000 and is headquartered in Emeryville, California.

22.     On October 11, 2021, Supernus and the Company announced the Proposed Transaction:

> ROCKVILLE, Md. and EMERYVILLE, Calif., Oct. 11, 2021 (GLOBE NEWSWIRE) -- Supernus Pharmaceuticals, Inc. (Nasdaq: SUPN) and Adamas Pharmaceuticals, Inc. (Nasdaq: ADMS), today announced a definitive agreement for Supernus to acquire Adamas through a tender offer for $8.10 per share in cash (or an aggregate of approximately $400 million), payable at closing plus two non-tradable contingent value rights (CVR) collectively worth up to $1.00 per share in cash (or an aggregate of approximately $50 million), for a total consideration of $9.10 per share in cash (or an

5

aggregate of approximately $450 million). The first CVR, worth $0.50 per share, is payable upon achieving net sales of GOCOVRI® of $150 million in any four consecutive quarters between closing and the end of 2024. The second CVR, worth $0.50 per share, is payable upon achieving net sales of GOCOVRI of $225 million in any four consecutive quarters between closing and the end of 2025. The transaction is expected to close in late fourth quarter 2021 or in early first quarter 2022.

The transaction will provide Supernus with two marketed products: GOCOVRI (amantadine) extended release capsules, the first and only U.S. Food and Drug Administration (FDA)-approved medicine indicated for the treatment of both OFF and dyskinesia in patients with Parkinson's disease receiving levodopa-based therapy; and Osmolex ER® (amantadine) extended release tablets, approved for the treatment of Parkinson's disease and drug-induced extrapyramidal reactions in adult patients.

"This acquisition represents a significant step to further build a strong and diverse Parkinson's disease portfolio, and aligns with our focus of acquiring value-enhancing, clinically-differentiated medicines to treat CNS diseases," said Jack Khattar, President and CEO of Supernus Pharmaceuticals. "We have a proven track record of strong commercial execution, and look forward to building on GOCOVRI's growth momentum so that more patients can benefit from access to Adamas' innovative neurological therapies."

**Strategic and Financial Benefits**

- Strengthens Parkinson's disease portfolio with GOCOVRI (amantadine) extended release capsules, the first and only FDA-approved medicine indicated for the treatment of both OFF and dyskinesia in patients with Parkinson's disease receiving levodopa-based therapy.

- Diversifies and increases revenue base and cash flow

- Net sales of GOCOVRI were $71.2 million and $37.7 million in 2020 and for the first six months of 2021, respectively.

- Combined with the acquisition of US WorldMeds CNS products in 2020, this transaction significantly reduces the reliance on net sales of Trokendi XR®. In the first half of 2021 and on a combined proforma basis (including revenue from US WorldMeds and Adamas transactions), net sales of Trokendi XR® represent 48% of Supernus revenues down from 72% (excluding revenue from these transactions).

- Potential synergies of $60 million to $80 million in year one due to strong overlap with existing infrastructure.

- The acquisition is expected to be significantly accretive in 2022.

"We are pleased that Supernus recognized the value created at Adamas and firmly believe this path forward is an excellent outcome for not only our shareholders, but all our stakeholders," said Neil F. McFarlane, Chief Executive Officer of Adamas Pharmaceuticals, Inc. "With their shared commitment to helping patients affected by neurological diseases and their extensive resources, Supernus can continue to advance our mission and reach. I am extremely proud of Team Adamas for their hard work and dedication to get us to this point and am confident that partnering with Supernus will maximize the potential of our innovative therapies."

**Terms and Financing**

Under the terms of the agreement, Supernus will commence a tender offer to acquire all outstanding shares of Adamas Pharmaceuticals, Inc. for a purchase price of $8.10 per share in cash (or an aggregate of approximately $400 million) payable at closing plus two non-tradable CVRs. All cash consideration will be funded through existing balance sheet cash.

The CVR entitles Adamas stockholders to receive up to an additional $1.00 per share in cash (or an aggregate of approximately $50 million) payable upon GOCOVRI achieving certain net sales milestones within specified periods (subject to the terms and conditions contained in a Contingent Value Rights Agreement detailing the terms of the CVRs). These milestones include (i) $0.50 per share payable if in any four consecutive quarters between closing and the end of 2024, net sales of GOCOVRI achieving $150 million, and (ii) another $0.50 per share payable if in any four consecutive quarters between closing and the end of 2025, net sales of GOCOVRI achieving $225 million. There can be no assurance any payments will be made with respect to the CVR.

**Approvals and Timing of Close**

The transaction, which has been approved by the boards of directors of both companies, is expected to close in late fourth quarter 2021 or in early first quarter 2022, subject to customary closing conditions, including receipt of required regulatory approvals and the tender of a majority of the outstanding shares of Adamas' common stock. Following the successful closing of the tender offer, Supernus will acquire any shares of Adamas that are not tendered in

the tender offer through a second-step merger at the same consideration as paid in the tender offer.

**Full Year Financial Guidance**

Supernus will provide full year 2022 financial guidance during the Company's fourth quarter 2021 financial results conference call in February 2022.

**Advisors**

Jefferies LLC is acting as the exclusive financial advisor to Supernus. Lazard is acting as the exclusive financial advisor to Adamas. Saul Ewing Arnstein & Lehr LLP is serving as legal counsel and Grant Thornton is providing due diligence services to Supernus, and Cooley LLP is serving as legal counsel to Adamas.

\* \* \*

23.     It is therefore imperative that Adamas's stockholders are provided with the material information that has been omitted from the Solicitation Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests.

**B.     <u>The Materially Incomplete and Misleading Solicitation Statement</u>**

24.     On October 25, 2021, Adamas filed the Solicitation Statement with the SEC in connection with the Proposed Transaction.  The Solicitation Statement was furnished to the Company's stockholders and solicits the stockholders to tender their shares in support of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Solicitation Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Solicitation Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to tender their shares, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act.

25.     The Solicitation Statement omits material information regarding the Company's financial projections and the valuation analyses performed by the financial advisors, the disclosure of which is material because it provides stockholders with a basis to project the future financial performance of the target company, and allows stockholders to better understand the analyses performed by the financial advisor in support of its fairness opinion of the transaction.

26.     For the Management Projections (the "Projections") prepared by Company management for Adamas for fiscal years 2021 through 2032, the Solicitation Statement fails to provide what the line items used to calculate EBIT and Levered Free Cash Flow.

27.     With respect to Lazard's *Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose: (i) the basis for applying the range of discount rates from 11.0% to 13.0%; (ii) the estimated net cash of Adamas at September 30, 2021; (iii) the fully diluted number of Company shares as of October 8, 2021.

28.     With respect to Lazard's *Premia Paid Analysis*, the Solicitation Statement fails to disclose the transactions and premia observed by Lazard for the analysis.

29.     With respect to Lazard's *Research Analyst Price Targets* analysis, the Solicitation Statement fails to disclose the equity research analysts selected and the corresponding price targets published by each analyst.

30.     In sum, the omission of the above-referenced information renders statements in the Solicitation Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff will be unable to make a fully-informed decision regarding whether to tender their shares, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for
Violations of Section 14(e) of the Exchange Act**

31.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

32.     Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . ." 15 U.S.C. § 78n(e).

33.     Defendants violated Section 14(e) of the Exchange Act by issuing the Solicitation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in conjunction with the Tender Offer. Defendants knew or recklessly disregarded that the Solicitation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

34.     The Solicitation Statement was prepared, reviewed and/or disseminated by Defendants. It misrepresented and/or omitted material facts, including material information about the consideration offered to stockholders via the Tender Offer, the intrinsic value of the Company, the Company's financial projections, and the financial advisor's valuation analyses and resultant fairness opinion.

35.     In so doing, Defendants made untrue statements of material fact and omitted material information necessary to make the statements that were made not misleading in violation

of Section 14(e) of the Exchange Act. By virtue of their positions within the Company and/or roles in the process and in the preparation of the Solicitation Statement, Defendants were aware of this information and their obligation to disclose this information in the Solicitation Statement.

36.     The omissions and misleading statements in the Solicitation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares or seek appraisal. In addition, a reasonable investor would view the information identified above which has been omitted from the Solicitation Statement as altering the "total mix" of information made available to stockholders.

37.     Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

38.     The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

<u>COUNT II</u>
**Violations of Section 14(d)(4) of the Exchange Act and
Rule 14d-9 Promulgated Thereunder
(Against All Defendants)**

39.     Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

40.     Defendants have caused the Solicitation Statement to be issued with the intention of soliciting stockholder support of the Tender Offer.

41.     Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

42.     The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which render the Solicitation Statement false and/or misleading.

43.     Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

44.     The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff and Plaintiff will be deprived of her entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

## COUNT III

### On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

45.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

46.     The Individual Defendants acted as controlling persons of Adamas within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Adamas, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and

control, directly or indirectly, the decision making of Adamas, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

47.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

48.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Adamas, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Solicitation Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Solicitation Statement.

49.     In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Solicitation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

50.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

51.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(d) and (e), by their

acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

52.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

<b>RELIEF REQUESTED</b>

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Solicitation Statement;

A.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

B.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

C.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.     Granting such other and further equitable relief as this Court may deem just and proper.

<b>JURY DEMAND</b>

Plaintiff demands a trial by jury.

Dated: October 26, 2021                    By:   **MELWANI & CHAN LLP**

14

/s *Gloria Kui Melwani*

Gloria Kui Melwani (GM5661)
1180 Avenue of Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*